**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| DELUTHA H. KING, individually ) <br> and as the Executor of the Estate ) <br> of Cecil C. Keck and of the Estate ) <br> of Mabel W. Keck, LOIS W. KING,) <br> RONALD H. LOVING and ) <br> KRISTIE L. TAYLOR ) <br> ) <br>     Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> KOVACK SECURITIES, INC., ) <br> and BRIAN KOVACK ) <br> ) <br>     Defendants. ) <br> _____) | Civil Action No. 1:18-cv-04079-SCJ <br><br> **Jury Trial Demanded** |

## AMENDED COMPLAINT FOR DAMAGES

COME NOW Delutha H. King, individually and as the Executor of the Estate of Cecil C. Keck and of the Estate of Mabel W. Keck, Lois W. King, Ronald H. Loving and Kristie L. Taylor (collectively, Plaintiffs) and for their Amended Complaint pursuant to Federal Rule of Civil Procedure 15 and this Court's Order entered August 7, 2019 [Doc. No. 26], state as follows:

## **PARTIES**

1.

Plaintiffs Delutha H. King, individually and as the Executor of the Estate of Cecil C. Keck and of the Estate of Mabel W. Keck, Lois W. King, Ronald H. Loving and Kristie L. Taylor are individual citizens of the state of Georgia who are domiciled in this district at all times material and/or legal representatives of estates of decedents who were citizens of the state of Georgia and who were domiciled in this district at the time of his or her death.

2.

Defendant Kovack Securities, Inc. is a FINRA registered broker-dealer established as a for profit corporation in the state of Florida with its principal office at 6451 N. Federal Hwy., Ste. 1201, Ft. Lauderdale, Florida 33308. Kovack Securities, Inc. was a citizen of the state of Florida at the time of filing of this lawsuit and continues to be a citizen of that state. Service was perfected on this Defendant by serving its registered agent, Brian Kovack, at the foregoing stated address.

3.

Defendant Brian Kovack is the President and a beneficial owner of Kovack Securities, Inc. This defendant participated in and benefited from the transfer of assets in violation of the Uniform Fraudulent Transfer Act, O.C.G.A. § 18-2-70 (2014) *et. seq*. Upon information and belief this Defendant is a Florida citizen,

domiciled in Florida at the time of filing of this lawsuit and to date, who was served at 6451 N. Federal Hwy., Ft. Lauderdale, Florida 33308.

## JURISDICTION AND VENUE

4.

This Court has subject matter jurisdiction over this case because there is complete diversity among the parties and the matter in controversy exceeds $75,000. This Court has personal jurisdiction over Defendants because they transacted business in the State of Georgia and have transferred assets located in this district in violation of O.C.G.A. § 18-2-70 et. seq. (2014). Venue is also proper in this Court because certain events giving rise to the Plaintiffs' cause of action took place in this judicial district.

## FACTUAL BACKGROUND

5.

Plaintiffs are an elderly couple and four other family members or their estates, each of who for many years entrusted the investment of their life savings to Resource Horizons Group, LLC ("Resource Horizons" or "RHG"), and its former registered representative, Robert Gist.

6.

At all times relevant, Resource Horizons operated from its principal place of business in Marietta, Georgia and branch offices throughout Georgia.

7.

Gist engaged in a scheme whereby he stole funds from Plaintiffs' accounts for his own personal purposes through illicit activities involving his outside businesses. Resource Horizons knew of and had authorized Gist to engage in such businesses.

8.

Regulators shut down Gist's scheme in 2013 and he later was convicted and imprisoned for his crimes, but not before Plaintiffs lost substantially all the money they had given Gist to invest.

9.

On or about June 26, 2013, Plaintiffs filed arbitration claims with the Financial Industry Regulatory Authority ("FINRA") against Resource Horizons and certain individuals arising out of these losses, FINRA Case No. 13-01901 ("Arbitration").

10.

During the pendency of the Arbitration, Resource Horizons' assets had substantial value, as it then employed over 100 registered representatives and generated revenue and net income in excess of $11,000,000 and $286,220, respectively in 2013.

11.

Also during the pendency of the Arbitration, Kelly Miller, who was then the President of Resource Horizons, engaged in discussions with Defendant Kovack Securities, Inc. ("Defendant KSI") for the purchase and sale of Resource Horizons' assets, including its customer accounts (with the attendant right to manage the accounts as well acquire customer information and the good will associated with those customer relationships) (hereinafter "Assets").

12.

Throughout these discussions Resource Horizons owned the Assets and the Assets had value.

13.

On September 19, 2014 ("Award Date"), the FINRA Panel in the Arbitration rendered an Award against Resource Horizons, Kelly Miller, and her husband, David Miller, and in favor of Plaintiffs for compensatory and punitive damages, attorney's fees and costs in the total amount of $3,897,762.30 ("Award").

14.

On the Award Date, Resource Horizons owned the Assets and the Assets had value.

15.

After receiving a copy of the Award, Kelly Miller and Defendant Brian Kovack, with the assistance of an outside agent ostensibly retained to jointly represent Resource Horizons and Defendant KSI, colluded to hide from FINRA regulators the fact that they had engaged in prior discussions for the purchase and sale of the Assets, to wit:

   a. Late in the evening of the Award Date the outside agent circulated a draft of a proposed e-mail to FINRA which stated that "RHG has been in discussions with KSI as a potential purchaser of the firm's assets";

   b. The next day the outside agent sent a "revised" draft e-mail "to address Kelly's comments." The revised e-mail deleted the statement that RHG has been in discussions with KSI as a potential purchaser of the firm's assets and replaced it with a statement that "RHG has been in discussions with KSI as a potential home for the representatives who desire to go there as well as their customer accounts."

   c. Later that same day Kelly Miller and Defendant Brian Kovack confirmed their agreement to this change and the e-mail was delivered to FINRA.

16.

On Monday, September 22, 2014, FINRA required Defendant KSI and Resource Horizons to address a series of questions in support of a Continuing

Membership Application ("CMA") including a confirmation in writing of specifically which assets would be transferred.

17.

On Thursday, September 25, 2014, Kelly Miller and Defendant Brian Kovack, with the assistance of the outside agent, filed false statements in response to FINRA's questions, to wit: that RHG "suggest[s] that customer accounts and registered representatives are not assets of RHG since both the customer and the registered representative can choose to do business with any brokerage firm they wish and ultimately, RHG does not own or control those relationships."

18.

In fact, on the date of the CMA responses, RHG had 3,341 customer brokerage accounts with assets under management of $326 million and an additional 48,818 direct business accounts with assets under management of $1.185 billion. The commissions and other revenues generated through these customer accounts (with the attendant right to manage the accounts as well as use customer information and benefit from the good will associated with those customer relationships) represented substantially all of the assets of Resource Horizons.

19.

The Assets were transferred to Defendants prior to July 1, 2015.

20.

Defendants paid no consideration for the transfer of the Assets.

21.

At the time of the transfer, the sum of Resource Horizons' debts was greater than the sum of its assets, and Resource Horizons was not generally paying its debts as they became due.

22.

Kelly Miller was an insider and officer of Resource Horizons. She was responsible for conserving and managing the remaining assets of Resource Horizons for the benefit of Plaintiffs, as creditors of Resource Horizons, and not in any manner for the purpose of obtaining a preference or advantage to herself.

23.

As valuable consideration for her false statements, Defendants promised Kelly Miller employment with Defendant KSI upon completion of the transfer of RHG's assets. Kelly Miller expressed enthusiasm for this quid pro quo, at one point stating she would "make the KSI sales pitch."

24.

Defendant KSI in fact did employ Kelly in connection with and after the transfer of the Assets.

25.

Resource Horizons did not pay the Award and remains indebted to Plaintiffs.

26.

All conditions precedent to the filing of this action have occurred. If they have not occurred, such failure is due to Defendant(s) and is not the fault of Plaintiffs.

27.

Plaintiffs have hired the undersigned law firm to represent them in this action and have agreed to pay them reasonable attorney's fees through trial.

## COUNT I -- VIOLATION OF THE UNIFORM FRAUDULENT TRANSFER ACT O.C.G.A. § 18-2-70 *et. seq.* (2014)[1]

28.

Plaintiffs restate and incorporate by reference paragraphs 5 through 27 as if fully stated herein.

29.

Plaintiffs are creditors of Resource Horizons and Resource Horizons is a debtor of Plaintiffs.

---

[1] The Georgia legislature adopted the Uniform Voidable Transfers Act (UVTA) effective July 1, 2015. See O.C.G.A. § 18-2-70 (2017), Note. The UVTA does "[n]ot apply to a transfer made or obligation incurred before July 1, 2015" or "to a right of action that has accrued before July 1, 2015." *RES-GA McDonough, LLC v. Taylor English Duma LLP*, 302 Ga. 444, 448, 807 S.E.2d 381, 385-86 (2017). Therefore the prior law under the Georgia Uniform Fraudulent Transfers Act (UFTA) apply. *Id*.

30.

The Assets were property of Plaintiffs' debtor, Resource Horizons.

31.

The debtor, Resource Horizons, made the transfer with actual intent to hinder, delay, or defraud Plaintiffs in that:

a. Before the transfer was made the debtor had been sued or threatened with suit;

b. The transfer was of substantially all of the debtor's assets;

c. The value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred;

d. The debtor was insolvent or became insolvent shortly after the transfer was made; and

e. The transfer occurred shortly before or shortly after a substantial debt was incurred.

32.

Defendants did not give value for the Assets.

33.

The transfer is avoidable and voidable.

34.

Defendants are the first transferee of the Assets or persons for whose benefit the transfer was made.

35.

Judgment is warranted based on the value of the Assets in an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require.

36.

The debtor, Resource Horizons, made the transfer without receiving a reasonably equivalent value in exchange for the transfer.

37.

The debtor was engaged or about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or the transaction.

38.

Plaintiffs are entitled to avoidance of the transfer to the extent necessary to satisfy their claim.

39.

The debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

40.

Plaintiffs are entitled to avoidance of the transfer to the extent necessary to satisfy their claim.

**COUNT II - AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

41.

Plaintiffs restate and incorporate by reference paragraphs 5 through 27 as if fully stated herein.

42.

Kelly and David Miller and Resource Horizons were in a fiduciary relationship with the Plaintiffs because they were Plaintiffs' investment advisors. Due to the insolvency of Resource Horizons, Kelly Miller and David Miller, as officers of Resource Horizons, also owed fiduciary duties to Plaintiffs as RHG's creditors to refrain from making fraudulent or preferential transfers of RHG's assets.

43.

Despite the insolvency of Resource Horizons and their fiduciary duty to Plaintiffs, the Millers made fraudulent and preferential transfers for their benefit and

the benefit of the Defendants.

44.

The Millers breached their fiduciary duties to Plaintiffs by making those transfers.

45.

Defendant Brian Kovack and Kovack Securities, Inc. aided and abetted the Millers' breach of fiduciary duty by knowingly assisting in the fraudulent transfer of the Assets to Kovack Securities, Inc.

46.

As a result, the Plaintiffs have been injured and are entitled to recover damages proximately caused by Defendants' misconduct.

### COUNT III:  CIVIL CONSPIRACY

47.

Plaintiffs re-allege and incorporate paragraphs 5 through 27 as if fully stated herein.

48.

With regard to their acts and omissions, breaches, and torts, Defendants and their co-conspirators have all covertly and clandestinely conspired and acted in concert for the purpose of accomplishing both unlawful ends and lawful ends through unlawful means.

49.

Through a series of unlawful overt acts, Defendants' and their co-conspirators' scheme caused Plaintiffs substantial injury.

50.

Defendants are each jointly and severally liable to Plaintiffs for each and every one of said acts and omissions and for all of the damages caused thereby.

## COUNT IV – ATTORNEY'S FEES AND EXPENSES OF LITIGATION UNDER O.C.G.A. § 13-6-11

51.

Plaintiffs restate and incorporate by reference paragraphs 5 through 27, 40, 46, and 50 as if fully stated herein.

52.

Defendants have acted in bad faith, been stubbornly litigious and caused Plaintiffs unnecessary trouble and expenses with respect to the matters raised in this Complaint.

53.

Plaintiffs therefore requests that the Court order Defendants to pay all expenses associated with this litigation, including attorney's fees and costs, under O.C.G.A. § 13-6-11.

## DEMAND FOR JURY TRIAL

54.

Plaintiffs demand a jury trial in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for orders, relief, recovery and judgment against Defendants as follows:

(a) Plaintiff be awarded judgment against Defendants in an amount not less than $75,000 to be determined at trial, plus all consequential, incidental, general, and other damages resulting from Defendants' misconduct;

(b) Plaintiffs be awarded actual attorney's fees and costs pursuant to O.C.G.A. §13-6-11;

(c) That all costs of this action be cast against Defendants;

(d) That Plaintiffs be awarded both prejudgment and post-judgment interest; and

(e) That Plaintiffs be awarded such additional damages, remedies, or relief as the Court may deem just and proper.

Respectfully submitted this 27th day of August, 2019.



/s/ Adam S. Rubenfield
David J. Hungeling
Georgia State Bar No. 378417
Adam S. Rubenfield
Georgia State Bar No.: 419033
Peachtree 25th, Suite 599
1718 Peachtree Street
Atlanta, Georgia 30309
TEL (404) 574-2466
FAX (404) 574-2467
david@hungelinglaw.com
adam@hungelinglaw.com
***Attorneys for Plaintiffs***

## **CERTIFICATE OF SERVICE**

Pursuant to Local Rule 7.1D, the undersigned counsel hereby certifies that the foregoing has been prepared with a font size and point selection (Times New Roman, 14 pt.) that was approved by the Court, and that on this 27th day of August, 2019, the foregoing "**AMENDED COMPLAINT FOR DAMAGES**" was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

> G. Wayne Hillis, Jr., Esq.
> Justin P. Gunter, Esq.
> Parker, Hudson, Rainer & Dobbs LLP
> 3030 Peachtree Street N.E., Suite 3600
> Atlanta, Georgia 30308
> *gwh@phrd.com*
> *jgunter@phrd.com*

>                          /s/ Adam S. Rubenfield
>                          Adam S. Rubenfield
>                          Georgia State Bar No.: 419033